IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MITCHELL RAE BECKWITH**, | Case No. 3:23-cv-1158-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **HEAD RN NIKKI**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Plaintiff Mitchell Rae Beckwith, an adult in custody at the Multnomah County Detention Center (MCDC), representing himself, brings a First Amendment retaliation claim[1] under 42

---

[1] On September 6, 2023, the Court *sua sponte* dismissed Plaintiff's Eighth Amendment claims asserting violations based on allegations that his food was not aesthetically pleasing. ECF 6. On September 21, 2023, Plaintiff filed an amended complaint, ECF 8, realleging Eighth Amendment claims against two defendants, Deputy Reid and Sergeant Bryant, who the Court had dismissed from the case in its September 6th Order. Plaintiff asserted that each defendant violated the Eighth Amendment by denying Plaintiff a meal on one occasion. Defendant argues that Plaintiff's original complaint is the active complaint and that the amended complaint is not active because it was not served. Plaintiff, however, is proceeding *in forma pauperis* and the marshals conduct service. Further, incarcerated plaintiffs usually do not have access to the address of private jail personnel. Generally, the court clerk obtains a waiver of service from counsel in these circumstances. It appears that obtaining a waiver of service for Defendants Reid and Bryant in this case was inadvertently missed. Counsel, however, was provided a copy of the amended complaint through the Court's CM/ECF system.

U.S.C. § 1983 against Defendant Nikki Propert,[2] a manager in the jail's health department. Before the Court is Defendant's motion for summary judgment. For the reasons discussed below, the Court grants Defendant's motion and terminates this case.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing

---

Normally, if a service issue such as this arises, the Court would extend the time for service under Rule 4(m) and allow Plaintiff to correct the defect in service. The Court, however, concludes that Plaintiff's claims under the Eighth Amendment against Deputy Reid and Sergeant Bryant fail as a matter of law, for the reasons articulated by Defendant. *See* ECF 2 at 8 n.1. Thus, allowing Plaintiff to cure the defect in service would be futile. The Court accordingly considers Plaintiff's First Amendment retaliation claim to be the only properly asserted claim in this case.

[2] Plaintiff refers to Ms. Propert as "Head RN Nikki."

PAGE 2 – ORDER

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court must also liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit further instructs that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules. *Pro se* inmates are, however, expressly exempted from this rule." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). For a *pro se* inmate, courts "should avoid applying summary judgment rules strictly."[3] *Id.* "This rule exempts pro se inmates from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (emphasis in original). The exception for *pro se* inmates does "not entirely release [an inmate] from any obligation to identify or submit some competent evidence supporting his claim." *Id.*

## BACKGROUND

Plaintiff is an adult in custody at the Multnomah County Detention Center. Beginning in March 2023, corrections deputies at the facility reported a series of incidents in which Plaintiff used containers such as milk cartons to store his feces. *See generally* ECF 15, 16. Plaintiff

---

[3] Recognizing that courts apply rules less strictly to incarcerated parties, the Court will consider in its analysis Plaintiff's second "response" to Defendant's summary judgment motion, ECF 22, and its accompanying declaration of Plaintiff, ECF 23, even though they were filed after Defendant filed her reply and Plaintiff did not seek leave to file a surresponse.

PAGE 3 – ORDER

frequently smeared the feces around his cell, his possessions, and even on his person. *See, e.g.*, ECF 16 at 30, 40, 43, 44. On several occasions, he sprayed (or threatened to spray) the cartons of feces on his food port, other adults in custody, and staff. *See, e.g.*, *id.* at 40. For three months, staff at the facility removed stored feces from Plaintiff's cell on almost a daily basis. Plaintiff eventually lost authorization to receive the milk cartons that he had been misusing. ECF 16 at 37.

Defendant is the Senior Manager at Multnomah County Corrections Health. ECF 14 at 2. In that role, she responds to appeals of medical grievances and medical request forms (MRFs) filed by adults in custody. She interacted with Plaintiff on two occasions, both by email. *Id.* The first email, sent in December 2019, informed Plaintiff that she had received a grievance that he had filed. In this email, she noted that medical staff had already seen Plaintiff numerous times since he had filed his grievance, and that Plaintiff himself stated that the issue was resolved. *Id.* at 5. She also encouraged Plaintiff to submit an MRF if he had any medical concerns. *Id.* In her second email, sent in April 2023, she acknowledged that Plaintiff had appealed a different grievance and she concluded that the original response to that grievance had been satisfactory.[4] *Id.* at 6. These two emails constitute all of the interaction between Plaintiff and Defendant.

Defendant never interacted with Plaintiff in person. *Id.* at 2. She explains: "I do not review or respond to medical grievances except appeals. I am generally not aware of medical grievances until they reach the appeal stage. I am not informed about grievances unrelated to medical care." ECF 14 at 2. She never personally oversaw any of the food or drinks that were

---

[4] Defendant recounts that Plaintiff had a visit with a psychiatric nurse and was scheduled for a follow up and a separate appointment with a mental health clinician. She also states that she "informed our Mental Health Team right away on the concerns you stated in your grievance." ECF 14 at 6.

PAGE 4 – ORDER

served to Plaintiff. *Id.* at 3. She notes that she has "never been involved in food, drink or diet decisions relating to Plaintiff." *Id.* at 3.

Plaintiff's responses are not a model of clarity and do not contain many factual or legal assertions. He mostly asserts conclusions. Plaintiff does, however, state in his declaration that he was told by "ASGT Rayburne" that "medical is in charge of your lactose diet." ECF 3 at 5. Plaintiff filed a document along with his second response to summary judgment purporting to be a discovery request, including requesting a copy of video footage that purportedly would substantiate this conversation. Viewing the facts in the light most favorable to Plaintiff, the Court accepts that a corrections employee told Plaintiff that medical was in charge of his lactose-free diet.

## DISCUSSION

Plaintiff asserts a First Amendment retaliation claim against Defendant. To establish such a claim, a plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Within the prison context, a plaintiff must show the following five specific elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Defendant argues that Plaintiff has

not met his burden with respect to elements (1), (2), and (5).[5] The Court addresses these three elements in turn.

**A. Adverse Action**

Plaintiff must first show that Defendant is a state actor who took adverse action against Plaintiff. This assertion cannot be general or unsubstantiated; Plaintiff "must establish individual fault." *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) (requiring specificity when a plaintiff seeks to hold an individual defendant personally liable for damages). "Sweeping conclusory allegations will not be sufficient to prevent summary judgment." *Id.* at 34. Put differently, Plaintiff must demonstrate to the Court that he is suing the proper defendant. *See, e.g.*, *Halloum v. Ryan*, 2014 WL 1047144 at *8-9 (D. Ariz. Mar. 18, 2014) (applying *Leer* to hold that a plaintiff who could offer no "probative evidence" establishing that the defendant "personally took an adverse action" against the defendant could not survive a summary judgment motion); *Soares v. Paramo*, 2017 WL 1166277 at *16 (S.D. Cal. Mar. 29, 2017) (granting summary judgment against a plaintiff because no genuine dispute existed to show that the defendant "played any role whatsoever" in the adverse action).

In her declaration, Defendant explains that she was not involved in any medical decisions or care planning for Plaintiff. Nor had she been involved in any dietary decisions relating to Plaintiff. In response, Plaintiff offers the general assertion that he was told that medical was in

---

[5] Because Defendant does not argue that Plaintiff cannot meet the other two elements, the Court does not discuss those elements. Plaintiff must prove all five elements, and thus failure to show a genuine dispute of any element is fatal to Plaintiff's claim.

charge of his lactose-free diet. This evidence, however, offers no support that Defendant was herself involved with processing his relevant grievances or altering his diet. Plaintiff's generic claim that "medical is responsible" for his diet is insufficient to present a genuine dispute of material fact for his First Amendment retaliation claim that Defendant took the claimed adverse action against Plaintiff.

### B. Retaliatory Motive and Causation

Under the second element of the *Rhodes* analysis, Plaintiff must demonstrate that his protected conduct was a "substantial or motivating factor" behind Defendant's alleged conduct. As a threshold matter, Plaintiff must demonstrate that Defendant knew of Plaintiff's protected conduct. *See Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Defendant states that she was aware of only two grievances from Plaintiff (one in 2019 and one in 2023). Construing the facts in a light most favorable to Plaintiff, the Court finds that Defendant was aware of at least some of Plaintiff's protected First Amendment conduct.

In addition to knowledge, to survive summary judgment Plaintiff must also present either direct evidence of retaliatory motive or circumstantial evidence, such as that (1) Defendant expressed opposition to the protected conduct; (2) there was close temporal proximity between the protected conduct and the alleged retaliatory action; or (3) the defendant's proffered reason for the adverse action was pretextual. *McCollum v. Cal. Dept. of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011); *Strahan v. Kirkland*, 287 F.3d 821, 825 (9th Cir. 2002).

Analyzing these factors is somewhat constrained because the Court has concluded that Defendant did not take the alleged adverse action (placing him on a lactose-free diet). Nonetheless, Plaintiff has not provided evidence showing that his filing of the one 2019 and the

one 2023 grievance of which Defendant was aware was a "substantial or motivating factor" that caused Plaintiff's milk deprivation.

First, Plaintiff has offered no evidence that Defendant expressed opposition to Plaintiff's grievances. In Defendant's first email to Plaintiff, Defendant merely confirmed receipt of Plaintiff's grievance and informed him that he could submit an MRF if he had medical concerns. In her second email, Defendant informed Plaintiff that she had received from him an appeal of a separate grievance and that the original response that he had received had been appropriate. In neither response did Defendant discourage Plaintiff from filing MRFs or grievances going forward. Nor did she express opposition to the grievances he had filed.

Second, as for temporal proximity, there is no temporal proximity for the 2019 grievance. The April 2023 grievance is not close enough in time from the alleged diet deprivation beginning July 16, 2023, to support an inference of retaliatory motive. Under some circumstances three months may support an inference of retaliation. *See Ryan v. Patterson Dental Supply, Inc.*, 2000 WL 640859, at *15 (D. Or. May 12, 2000). Not, however, under the facts of this case, in which the adverse action was taken by an unrelated person for reasons unrelated to Plaintiff's grievances; Defendant did not have control over Plaintiff's diet, and MCDC staff revoked Plaintiff's access to milk cartons because he used them to store his feces.

Third, Plaintiff offers no other evidence showing pretext. Considering the facts of this case, even viewed in the light most favorable to Plaintiff, there is no genuine dispute regarding pretext, retaliatory motive, or causation. Given the Court's conclusion that Defendant did not engage in the alleged adverse action, Plaintiff is unable to show an issue of fact that Defendant's conduct caused the alleged harm.

## C. Legitimate Purpose

The final factor considers the penological purpose of the alleged action. "Federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Connor*, 515 U.S. 472, 482 (1995); *see also Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) ("We must defer to reasonable decisions of prison officials."). Despite this deference, however, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process." *Shepard*, 840 F.3d at 692 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Therefore, the relevant question is whether MCDC's decision to deny Plaintiff cartons of milk advanced a legitimate correctional goal that goes beyond a mere general justification.

Staff at MCDC recorded several instances in which Plaintiff used his milk cartons to store feces and urine. On occasion Plaintiff would throw his stored feces at MCDC staff and other adults in custody. He threated others with "sh*t bombs" and once told a deputy that he uses feces "because it is a weapon" and "creates fear" in other people." MCDC then stopped providing Plaintiff with milk cartons. This penological purpose is legitimate.

Plaintiff argues that because he used other containers to store feces and MCDC did not stop providing him with those containers (MCDC identifies that Plaintiff used items like meal trays, pillowcases, and Styrofoam cups), then there could not have been a legitimate purpose to stopping Plaintiff's milk cartons. This argument is unpersuasive. Just because the staff chose not to take the *most* extreme action does not make their less extreme action unjustified. Denying Plaintiff every single type of containers would be untenable in a prison; food must be served in something. Further, it may be less harmful to have a pillowcase thrown than a milk carton. Moreover, although Plaintiff occasionally used other means to store his feces, the record demonstrates that his storage containers of choice were the milk cartons. MCDC's decision to

PAGE 9 – ORDER

stop offering Plaintiff these cartons narrowly targeted this unsanitary conduct and is entitled to deference. This action advanced a legitimate correctional goal: keeping other adults in custody and MCDC safe in the wake of Plaintiff's threats to attack them with his feces. Plaintiff fails to raise a genuine issue of fact on this element. Because no reasonable juror could find for Plaintiff on three of the elements for his First Amendment retaliation claim, the Court grants Defendant's motion for summary judgment on this claim.[6]

## CONCLUSION

The Court GRANTS Defendant's motion for summary judgment and TERMINATES this case.

**IT IS SO ORDERED.**

DATED this 30th day of August, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[6] Defendant briefly argues in the alternative that Plaintiff's First Amendment retaliation claim also fails because he did not properly exhaust administrative remedies under 42 U.S.C. § 1997e(a). Defendant states only that because Plaintiff did not file a grievance that mention Defendant or would indicate Defendant's involvement, the issue is not exhausted. The Court is concerned, however, that Plaintiff may have filed a grievance asserting retaliation and describing Defendant without naming Defendant. Defendant does not state that Plaintiff did not file any grievance relating to First Amendment retaliation, or that any grievance filed relating to First Amendment retaliation clearly did not involve Defendant. Given that it is Defendant's burden to show exhaustion, the Court rejects this argument, made in the alternative.

PAGE 10 – ORDER